The case on the call is 5-14 Deg. Dierdre Hardy v. Henshaw. Counsel, will you proceed? Nice to see you again, Your Honor. Same here. You're back. The facts, briefly, are this. The case is up here. Essentially, I have a 2-6-19 motion to dismiss. It's not here on summary judgment. There really aren't a lot of affidavits, but the affidavits we do have are going to court. My client was under arrest and incarcerated in Jackson County Jail. The charge came out of Saline County, and for whatever reason that's not clear in the record, he was in Jackson County. He eventually pled guilty after spending about 13 months in the Jackson County Jail. He had phone privileges, and there's no dispute that he was on notice of the fact that when he was using the phone, that the authorities had the right to tape his recordings. And was this posted? I read the question. I think it was both posted, and I think there might have been even one affidavit says that there was some kind of warning when he picked up the phone. You acknowledge it? Yeah. He knew. He knew about being taped. But there was a recording that came on that said this conversation may be recorded. Right. But it didn't say it was being recorded. Well, thank you. I appreciate that. But I think for purposes of this case, obviously it was being recorded. Sure. Because they got the tapes and they gave it to the disclosure. And he was clear on the possibility of love, and obviously the bulk of whatever he was saying was. And so the state's attorney, Mr. Henshaw, he acquired the tapes, and there's no dispute that he gave the tapes to the disclosure and it was posted on the website. That was pursuant to a point? No. No. That's where we're getting, issue number one. Okay. Issue number one. They say that the reason that Mr. Henshaw, attorney Henshaw, state's attorney Henshaw gave the tapes to disclosure because there was a FOIA request. And there's no question that in the record there's an affidavit and there's a copy of a FOIA request. We're not disputing that. We are, however, strongly disputing the admissibility of that evidence. We filed a motion to strike the affidavit. We filed a motion to hold the ruling on the 2619 motion in abeyance so we could take discovery because we believe that there wasn't any FOIA request prior to the disclosure of giving up the tapes. Why do we believe that? Because my client, Mr. Fork, met with Mr. Jackhauser and Angela Hauser. The affidavit came from Angela Hauser. And there was a discussion about Saline County politics and corruption, et cetera, et cetera, et cetera. And at the end of the conversation, it rose to, well, why are my private conversations, you know, why are they being posted on your website? And further, I should say that we say throughout our brief and in the complaint that the disclosure of borderline publication, I mean, did we allege it? And, of course, we don't get any answer, but it's something that specializes in rumored gossip and frankly humiliating people. And we allege that. So the question was, why are you posting these tapes? And he says, well, we got them from the state's financial. And Jackhauser, if I'm right, said we didn't even have to do a FOIA request. That's what the affidavit says. Now, we conclude, we believe that for purposes of this appeal that you have to believe that or at least give us an opportunity to further that in discovery. Why? Because I spent more time on document examiners and the like than I normally do in a case, but if we do have the original, there is a thing called ink dating process. And most experts believe that by examination of the original with the ink dating, you can come up with an opinion within reasonable scientific certainty as to when that document was actually produced, was actually executed, actually created. So that begs the question. And so we get, so on appeal, in trial court, Judge Stanley says, well, I'm looking at the statute and it says you can, any affidavit is admissible. Mr. Henshaw, as a counsel, has abandoned that position on this appeal. Instead, they argue that Rule 191 applies to our challenge of the best evidence objection. And since what Mr. Henshaw, what Ford is saying in his affidavit is arguably hearsay, I don't know that it is, but it's arguably hearsay, it's excluded, shouldn't have even been considered, the copy comes in. That's not the rule. Illinois, and I go into this in great detail in my reply brief, with regard to the best evidence rule, back in the 1940s, had a pretty stringent standard about needing to have originals. And then eventually, this court, amongst other courts, was instrumental in embracing the federal rule of evidence on best evidence. What advantage would you gain by having the original? Because we believe, Your Honor, that the original is practical. Is what? Practical. We don't think there is an original. And that begs the question. If there is an original, Henshaw could easily solve this problem, just bring in the original. What advantage or disadvantage does that give you? The conversations were released, regardless of whether there was a FOIA or not. Okay. Well, then I think they're bereaved, and that's what they argued in the trial part, that's what they argued in this part. If there was no FOIA request, none whatsoever, there is no, he doesn't have any statutory, common law, other duty to release private information to borderline media publications. There's no sovereign immunity, there's no public official immunity, there's no common law, public official immunity, no community, zero. He's gone. And the suit has to proceed. They have, in our opinion, as we read the cases. And I don't think you're going to get much dispute from this, but I'll be waiting with open ears to hear Allie's counsel. But if there was no FOIA request, then we have Henshaw, just out of that, remember what the complaint says, out of malice, enmity, because these guys have a history, go back 20 years, an intent to ridicule and embarrass my client. He takes these tapes of very private conversations. Recall, Ford's mother, Ford's sister is dying of cancer. In fact, they did die. And these are the conversations that are being placed on the Internet by the disclosure. And so Ford, because of this enmity and bias, his decision to humiliate, takes these tapes, gives them to the disclosure, they put them on the Internet, and there was no FOIA request. So. But the first count is intrusion upon seclusion. Correct. In that, you have to show an expectation of privacy. We don't have that, right? The first count is, and I cite cases on this. Unfortunately, there's no Illinois case. But where you have, for instance, there's some doctor cases, there are other prison cases where you have a captive person like that, and somebody can acquire potentially private information, and it can be disclosed. But the other count. Intrusion upon seclusion, which was dismissed by the court, looks at the individual and what he or she knows, right? So it really doesn't matter how the information got released. If your client knew or knew it was being recorded and had no expectation of privacy, you would agree that the intrusion upon seclusion was properly dismissed. No, I don't, Your Honor. Okay. I can explain why. I didn't think you would. Thank you. I'll explain why. There's no question that Henshaw is a prosecuting state's attorney and properly acquired the private information. Now, if he's going to disclose it, he has to be authorized. That is one of the key elements of that tort. I don't see that. I don't see that in that tort. Well, that's... How does he have to be authorized? Anybody can release information about anybody, and if it's private and the plaintiff had an expectation of privacy, they get intrusion upon seclusion. If you look at the complaint, Your Honor, and what I did, and I don't know if I covered it adequately in the briefs or not. I'll be glad to cite supplemental authority on this if it is important to the court. It's at A-9 in my appendix. Mm-hmm. Henshaw's decision to disclose and take conversation was not authorized by court. But the Illinois Supreme Court does not use authorization in its definition of intrusion upon seclusion, does it? Every case that I have found, Your Honor, that's a necessary... Okay, I'll have to look at those. They do not have the right. And just think about it, Your Honor. For example, you might have a psychologist, a psychiatrist, who hears private information. Now, there's no question they authorize, they receive it. It's clearly private information, and for whatever reason, they decide to disclose it. They can only disclose it under those circumstances if they have authority from the person. And we feel like this is exactly the same situation. Mr. Ford is under a situation where he is under the care of a custodian of the state of Illinois. He was never told. Yes, he was told he was being taken, but he was never told that we are going to disclose this information. Don't make the phone call if you're concerned about that. There was no authorization at any point in time by my client to give Mr. Henshaw the right to disclose this information. I think it's with regard to this aspect of the appeal, it's one that I feel more comfortable about. Because I do want to spend a little more time on the best evidence. Because the lineage of the rule and the basis of it is, was there a genuine cause for concern? Was the authenticity of the document put into issue? There is no case anywhere that requires that there has to be some kind of admissible evidence, such as a 191 affidavit, that requires you have to make that kind of showing to put the best evidence objection into issue. And in this case, we have exactly that. The authenticity of the original becomes very crucial to the case. Because if I'm right, which I think I am, that if there never was a FOIA request, then all of the immunities and all of those arguments can go away. Now, and so where is the original? Where is it? Henshaw has had it. If it exists, he can bring it forward. We can examine it, and we can find out exactly when the original document was actually produced, actually created. And that, we have enough under the Illinois Rule 1003 to make a best evidence objection. Another point I want to make is that Henshaw says, his attorneys say, not Henshaw, his attorneys say, well, the reason that we gave, Henshaw gave the tapes to the disclosure is because there was a FOIA request. We don't have any affidavit from Henshaw in this case at all. All we have is the statements from his attorneys. There's no evidence anywhere from Henshaw as to why he did anything for any basis at all. We have to assume that all of the arguments that his attorneys were making, those were the ones that actually prompted Henshaw's motivation. The only affidavit that we've got in this case is from Angela Houser, no affidavit from Henshaw. We can't assume on a 2619 motion that that was the reason why he gave the tapes at all. And this was pointed out to the trial judge, and he just assumed that whatever the attorney in the trial court was saying, that was what Henshaw's motivations were. Well, in a 2619 motion, an attorney doesn't get to make an oral representation as to what the motives were of the witness, and that's taken as gospel, and the case is dismissed on the merits. And that's exactly what we have here. We have no affidavit from Henshaw. Now, one case that I think both sides agree is a very important case with regard to the immunities, and that is this Weber v. Quito case. I'm probably mispronouncing it. It's Quito. Quito. Same as the attorney. Judge. Our chief of police? Judge. I got you. Give it to me again. Quito. Quito. I'm sorry. No, that's okay. You know, I've heard the name. I've read a bunch of opinions, but I've never met the gentleman. Quito. Can I just say the Weber case? He's deceased. Oh, that's the other Quito. How many Quitos are there, Your Honor? A lot. A lot. Okay. I hope you guys haven't met them all. That was an interesting case because this court said the slander defamation suit, the torture suit against the attorney, could not go forward because the attorney had an ethical duty to make the disclosure if he had a good faith basis for believing that something that happened was wrong. Okay. Now, in this case. Let's talk about it. In this case. Huh? In this case, doesn't sovereign immunity presuppose that the actor, in this case Henshaw, did something wrong? Yes. So whether you have that FOIA request, the original or not, if you're looking at the doctrine of sovereign immunity, you presuppose that he committed an error in his employment. But if he thought that he was doing something that was required within his employment, he still gets the immunity, doesn't he? Like, if he thought that he had to respond to FOIA. I would even go so far as to say that if he was relying, because we don't have an affidavit from Henshaw, so we don't know why he did anything. Right. But both sides seem to agree because we both cite cases that say the same thing. Number one, we make an issue. Now we're getting onto the assumption that there was a FOIA request. If there wasn't a FOIA request, then there's no statute, there's no duty, there's nothing out there that says that Henshaw has some kind of mandate or there's some kind of requirement. He's got some kind of duty imposed on him to give information to disclose. And, of course, I'm not clear. Obviously, we feel that that never occurred. But let's move on to the FOIA situation and assume that at some point in time the original is introduced, there is ink dating, and lo and behold, the assertions we've been making are wrong. The FOIA request predated the date. The copy that we have is, in fact, a copy of the original. All right. Henshaw's attorney states in his brief, well, for me, is assuming that Henshaw didn't appoint himself as his own FOIA officer. Well, on review, we get the benefit of all inferences. And there's no affidavit from Henshaw. There's no affidavit from anybody else that he appointed himself his own FOIA officer. And that's a very important requirement in the statute. That's not a discretionary kind of thing. Under FOIA, you have to appoint a FOIA officer. That's not something that you can decide to do or not do. There's a requirement there. And the reason we have that as a requirement in there is that we've got somebody in that agency that's got some kind of familiarity with the law, knows what requests are legitimate, what requests are not legitimate. And one of the things that's in the FOIA, of course, is the exemption. And I would point out at great length that the athlete seems to indicate that I didn't make any factual basis for why the exemptions should occur, but just look at the complaint. At pages 17 and 18, there's a whole long list of exemptions here. Let me just read one of them. There's an exemption for personal information contained within public records, the disclosure of which would constitute a clearly warranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subject to the information. Now, we've all seen the Webber case indicates that in that situation, Mr. Quito had an obligation to make the charge, to pass on the obligation. In this case, there is an exemption that clearly applies. And there's others that Henshaw could have asserted, but he did not. There's no evidence that he appointed himself FOIA officer. There's no evidence that he appointed somebody else the FOIA officer. There's no evidence that anybody looked at these exemptions. And both sides seem to agree that you have an obligation on behalf of the person that you're going to be giving the information out, you're going to be disseminating and disclosing the information, to assert those exemptions. And Henshaw did not. My name's John Schmidt. I'm an assistant attorney general. I represent State's Attorney Henshaw. And we do ask for affirmance of the circuit court's dismissal of the complaint. There's a lot in this case. It's hard to figure out quite where to start. I'll start with the issue of whether there was a FOIA request or there wasn't. I will preface that, though, by saying that we think it doesn't matter that the complaint was properly dismissed either way. But the undervided evidence here is that Angela Hauser did make the FOIA request. She said so in her affidavit. Under Supreme Court Rule 191, that affidavit was properly considered. It was based on her personal knowledge, first-hand knowledge of whether she submitted a written FOIA request or not. And she could competently testify that she did. The only evidence to rebut it is pure hearsay. And pure hearsay would not have been admissible. We think that a copy of the FOIA request submitted would also be admissible, would also be adequate, because we don't think hearsay evidence creates a genuine question as to its admissibility. One other thing I would point out, according to Mr. Ford, Jack Hauser allegedly said there was no FOIA request. A layperson might not be familiar with what exactly constitutes a FOIA request. FOIA itself, and this would be Section 3C, says that FOIA requests are supposed to be in writing. A public body can disregard them if they're not in writing. But the public body can also choose to answer them to. So maybe Mr. Hauser was saying I don't think if what Mr. Ford is representing is correct, perhaps Mr. Hauser was saying I don't think we made a written FOIA request. I don't know. But in any event, it is a hearsay statement that we would say should not be considered. But I don't think for several of our arguments that whether there was a written FOIA request or not does matter. One of the arguments that we raise is sovereign immunity. And under Section 8D of the Court of Claims Act, which is 705 ILCS 505-8D, actions sounding in tort against the state are within the exclusive jurisdiction of the Illinois Court of Claims. So sovereign immunity applies as long as this is considered an action against the state. And we cite the Jenkins case for factors that should be considered. And I think the most important one was, was Henshaw acting within the scope of his authority? Whether or not there was a written FOIA request, and we think for purposes of this motion there was, but even if there wasn't, public officials do, especially the head of a public office, would have authority with regard to releasing public records under the custody and control of that office. So it would not be outside the scope of his authority to disclose records. Mr. Fort relied a lot on a case called Fritz. But in the Fritz case, sovereign immunity was held inapplicable because the defendants were accused of a criminal act, which the plaintiff was accusing the defendants of a criminal act, making a false report of a crime to the state police. Here's one thing we disagree about. Mr. Fort seems to assume it's illegal to disclose or unlawful to disclose documents if they are exempt under FOIA, or if you don't have to. FOIA doesn't say that. There is still discretion to disclose documents even if they are exempt, with some exceptions. There are some exceptions. There are some statutes, like the Illinois School Student Records Act, regarding student records, which would prohibit. And there are other statutes like that that would prohibit. Section 7.5 of FOIA lists some of those. And it might be outside the scope of authority to release records like that, but there are no allegations that the tapes here contain records like that. Do you think it matters that this was a pre-prosecution conversation? Like he was being held. He hadn't been prosecuted yet. So what was being disclosed, I think that's true. Is that not true? I believe, well, no, I think he had, I think the charges had been initiated against him. Yeah, but he hadn't been convicted. No, he had not been convicted. That's correct. So usually, FOIA or not, the prosecutor doesn't release anything that's pre-prosecution. But I think normally that's true, but FOIA, and I believe this is Section 7.1D of FOIA, would say that the prosecutor could exempt items that might interfere with the prosecution, might deny the person a fair trial. But in that situation, the state's attorney would have the burden of showing that it's exempt. It's not automatically exempt. I think there are some states where it would be, but it's not in Illinois. So you're saying that under this situation, he can disclose it? He could. It might be wrong to disclose it, but he could disclose it. Right, I mean, it might be subject to being second-guessed, certainly. Right. But he could legally. So sovereign immunity would apply. Yes, yes. And, you know, any duty that he allegedly breached would have arisen from his state employment because that's why he has custody of, I mean, that's, he wouldn't have custody of these records if not for his state employment. What about the intentional act? I'm sorry? What about an intentional act? We understand there's a little hatred going on between the parties or something like that. And what if he intentionally releases them to cause harm to Mr. Ford? How does that get covered under sovereign immunity? I think intentional torts still are covered by sovereign immunity unless it falls within one of these exceptions. If it's some action that's really wholly outside his authority. But I don't think the focus is on whether, I don't think the focus is on his motive so much as it, or the intent. The Port Wright case, Port Wright v. Doyle, that we cite in our case, in our brief, does involve intentional torts. And intentional tort claims could still be barred by sovereign immunity. That would be obviously a matter for the court of claims to potentially consider that if there was, you know, if there was that sort of intent that Your Honor is speaking about. So what would you have us do with this case? I would, I would say rule that it's barred by sovereign immunity because sovereign immunity is a jurisdictional argument. So I think that does come first. I think if the court disagrees with that, we also argue other immunities, including public official immunity. But I think it's also important, we've argued too that he failed to state a cause of action for any of his claims. And also that the public disclosure of private facts claim was barred by the one-year statute of limitations. Because according to their complaint, this material came out on Disclosure's website in February of 2012. But the complaint was not filed until June of 2013. And they did not claim any discovery rule, make any discovery rule type argument. They did argue that this should be considered a continuing violation. But Illinois, we've cited some authority for this in our brief, adheres to something called the single publication rule, which basically means the cause of action accrues upon the first publication. And I think one problem, I think even without the statute of limitations, the public disclosure of private facts claim has a serious problem at the outset. There has to be public disclosure by the defendant. And here there wasn't. It was disclosed to Angela and Jack Bowser. They're the ones who made the public disclosure, not the state's attorney. They're the ones who put the tapes on the website. If disclosure's made only to a single person or a small group, that's ordinarily not sufficient to constitute public disclosure, unless the person has made the disclosure to somebody with whom the plaintiff has a special relationship. And we cited a case in our brief where a plaintiff's coworkers were told that she had, I believe that she had had a mastectomy. And that would have been a special relationship between the plaintiff and the people to whom disclosure was made. That doesn't exist here. And I wanted to talk a little bit about intrusion upon seclusion. That doesn't, that court doesn't really focus upon the disclosure of the information. It focuses upon the actual intrusion, which would mean the actual examination into the person's private matters. And the restatement gives examples like looking at somebody's bank account or information or examining their wallet and finding out private information. Publication is not an element, as it is for public disclosure of private facts. So it looks upon the intrusion. Here the intrusion was the actual taping of the conversations. And case law from other jurisdictions indicates that that's a proper and authorized type of thing to do. Prisons often do it for security purposes and, yeah, primarily really for security purposes and to monitor the possibility of contraband being brought into a prison, things like that. Have you found any authority that would grant sovereign immunity to intentional infliction of emotional distress? The court right case that I mentioned is one of those. Court right? Court right, yes, versus Doyle. Thank you. And we also, you know, would assert that a cause of action for intentional infliction was not fled. And we don't think that the conduct alleged here, even if one were to disagree with the release of these tapes, that under the circumstances it would constitute extreme and outrageous conduct. Nor are there facts fled indicating severe emotional distress resulted. And it is the plaintiff's burden to plead facts showing that the conduct caused severe emotional distress. There are just general statements that he suffered severe anguish, which is generally not considered enough. And I'll close just by saying my opponent read from the Section 7.1c of FOIA, which is the exemption for matters containing personal privacy. What he left out was that the unwarranted invasion of personal privacy means disposing information that is highly personal or objectionable to a reasonable person and in which the subject's right to privacy outweighs legitimate public interest in the information. So public officials have to weigh and balance in making that determination. And again, you know, I think based on this record, it's hard to know whether he weighed or balanced properly because we don't really, we have some general knowledge of some of the things in these tapes, but we really don't have the specifics. They really weren't alleged in this case, and the plaintiff has never, in the trial court at least, did not ask for any ability to replete and add additional details. So basically for the reasons I've stated, we think the trial court correctly dismissed that section, although I'll point out the trial court did not find it necessary to address sovereign immunity, but we think this court should because, again, it's jurisdictional. So, and jurisdiction comes first ordinarily. But if this court disagrees on sovereign immunity, we think that public official immunity applies and also that he, that Mr. Forks simply failed to plead a cause of action for the three torts he alleges. And I thank the court for its time. Thank you, counsel. My time is short, so I'll talk fast. And loud. Yes, loud. I'm loud. So I can hear. In my opinion, and I've spent considerable time on this, if this court were to rule to put into issue the best evidence rule that you have to have admissible affidavit to the same standard that you have under Rule 191, you will be creating a higher standard for the best evidence objection than has ever been acknowledged by this court or any other court, federal court or state court, ruling on best evidence objection. What we have to raise is a genuine issue. And we've done it. Counsel mentioned that we didn't ask for leave to replead. There was only one motion. There wasn't several motions to dismiss. There was one motion and it was dismissed with prejudice. And there was nothing in the... And it was really unclear from the order whether the prejudice came because of the 2615 and the 2619 or otherwise. We would be delighted if it's necessary for us to go and put out verbatim many of the tapes that were put on the Internet. What is Mr. Henshaw's governmental duties? He's a prosecutor. He's supposed to be prosecuting and putting bad guys in jail. That's his official duties. Now, tell me, by giving these tapes to the disclosure, what prosecutorial function he was advancing. The answer is zero. If it's a balancing test that's supposed to be going on here, this is a classic case of somebody who has a governmental function that acquired information as a result of that governmental function and used that to bludgeon his enemy and his political opponent. And that's what this case is really about. Now, the Fritz case offers this standard. Whether or not the action of the governmental official did not arise solely by virtue of their state employment. Well, his state employment is a prosecutor. He didn't have any obligation, any duty, any mandate anywhere to leak this information. At page 12 of my reply brief, we talk about the issue of the exemptions. This case, this court in the Weber case, in deciding that there was immunity for not, for making the allegations, for making the report to the ethics board because it was a mandated duty. This court in the Weber case cited federal authority with regards to FOIA. And in this court, in that case, in Weber's case, where the government was required to produce requested documents, then there should be a sovereign immunity to apply. But there's very important language in the decision. And no FOIA exemption applied. This was a condition that this court put in the Weber decision. In this case, there are FOIA exemptions. They did apply. And Shaw, if there ever was a FOIA request, he never appointed a FOIA officer, which is important for the protection of court. And he never asserted any exemptions. He just gave it over, as the complaint alleged, because he wanted to ridicule and embarrass the court. Thank you. Thank you. We'll be back down in about 10 seconds, certainly. The court will adjourn now and recess until 1.30. Excuse me. The case will be taken under five.